CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 12 2015
JULIA C. DUDLEY, CLERK
BY: /s/ H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JONATHAN REED STILTNER, | ) | Civil Action No. 7:14-cv-00350 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GERALD MCPEAK, et al., | ) | By:   Hon. Jackson L. Kiser |
|     Defendants. | ) |        Senior United States District Judge |

Jonathan Reed Stiltner, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants: New River Valley Regional Jail ("Jail") Superintendent Gerald McPeak, Assistant Superintendent Lt. Col. Lawson, Jail physician Dr. Moses, and Jail Nurse Betty Akers. Plaintiff pursues three claims, alleging Defendants exhibited deliberate indifference to his mental health, infected left ear, and chronic nerve pain, in violation of the Eighth Amendment of the United States Constitution.[1] Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I conclude that a trial is necessary to resolve whether Dr. Moses exhibited deliberate indifference to Plaintiff's chronic nerve pain by withholding treatment due to cost. However, I grant the motion for summary judgment as to all other claims and defendants.

I.

A.    **Mental Health**

The New River Valley Community Services Board ("CSB") provides the professional psychiatric services to the Jail's inmates, including critical care, like suicide prevention, and non-critical care, like counseling. A mental health clinician visits the Jail once per week to determine

---

[1] Plaintiff also alleged that Defendants were deliberately indifferent to the need for hepatitis testing. Plaintiff has since conceded that he failed to exhaust available administrative remedies about the claim, and consequently, Defendants are entitled to summary judgment on that claim. See, e.g., 42 U.S.C. § 1997e(a).

and prioritize inmates' medical need for psychiatric services, and a psychiatric nurse practitioner visits inmates once per month. These two CSB staffers are responsible for selecting and scheduling the inmates' psychiatric care. None of the Defendants control, schedule, or render mental health treatment at the Jail.

**B.    Infected Left Ear**

Soon after his arrival at the Jail in February 2014, Plaintiff reported to the medical department with complaints of sneezing, sore throat, and nasal congestion, pressure, and drip. Plaintiff advised staff that tubes were removed from his ears within the past year and that he is allergic to Bactrim and "-cillin" type antibiotics.

Dr. Moses first saw Plaintiff on March 5, 2014, at which time Plaintiff complained of nasal congestion with a productive cough of yellow or bloody post-nasal drip. After an examination, Dr. Moses diagnosed Plaintiff with acute bronchitis/sinusitis and prescribed the antibiotic doxycycline.[2]

On April 1, 2014, Plaintiff saw Dr. Moses again. Plaintiff complained that his left ear hurt and explained that he could not tolerate doxycycline because it made him nauseous and vomit. Dr. Moses diagnosed Plaintiff with an inflamed left ear and an inflamed throat and prescribed the antibiotic Cipro for ten days as a substitute for doxycycline.

On April 30, 2014, Plaintiff saw Dr. Moses again due to Plaintiff's continued sinus congestion, decreased hearing in the left ear, and nasal pressure and drainage. Plaintiff explained that Cipro had no effect and that tubes in his ears recently had been removed. Dr. Moses' examination revealed that Plaintiff's left ear drum was inflamed with perforation, and Dr. Moses

---

[2] Plaintiff also received treatments for wax buildup in his right ear. Because the treatment of the right ear is not contested in this action, I recite the facts relevant to the treatment of only the left ear.

2

diagnosed Plaintiff with left ear inflammation. Dr. Moses again ordered doxycycline as the antibiotic, despite Plaintiff's nausea and vomiting the last time he ingested it. Plaintiff did not complete this second prescription for doxycycline due to gastrointestinal distress, and consequently, Plaintiff continued to experience pain, pressure, and hearing loss in his left ear.

On May 13, 2014, Plaintiff returned to see Dr. Moses. Because his left ear was still inflamed, Dr. Moses referred Plaintiff to a consultation with an ear, nose, and throat physician ("ENT").

A nurse, who is not a defendant, told Plaintiff, and noted in his medical file, that Plaintiff would have to put $60.00 in his inmate account to pay for the consultation with the ENT before it would be scheduled. Plaintiff filed a grievance the next day on May 14, 2014, objecting to having to pay for the specialist. Superintendent McPeak responded on the same day, explaining to Plaintiff that an appointment was made with the ENT without the need for Plaintiff to deposit $60.00 and that the appointment was scheduled subject to the ENT's availability.

Less than three weeks later on June 3, 2014, the ENT saw Plaintiff, diagnosed Plaintiff with a perforated ear drum, and ordered Cortisporin ear drops, which Dr. Moses subsequently approved. Although not written on a prescription form, the ENT's instructions to Plaintiff suggested he ingest Vitamin C and use a saline nasal rinse. However, Dr. Moses did not approve these two suggestions because he felt, in his medical judgment, that they were not medically necessary to treat Plaintiff's left ear.

Plaintiff returned to the Jail's medical department on June 24, 2014, reporting that the Cortisporin drops made his ear itch. Dr. Moses determined that Plaintiff's left ear was still inflamed and called the ENT about changing the Cortisporin prescription due Plaintiff's reaction.

3

The ENT recommended that the prescription be changed to slightly decrease the quantity of drops, which Dr. Moses approved and ordered.

Plaintiff returned to the medical department on August 11, 2014, with continued complaints about his left ear, including decreased hearing. Dr. Moses' examination revealed left ear inflammation, and he referred Plaintiff to the ENT for another evaluation. Plaintiff stopped taking the Cortisporin drops after this appointment because he felt the drops caused burning and itching in his ear without benefit. Plaintiff was transferred out of the Jail before he returned to the ENT or Dr. Moses.

### C. Chronic Nerve Pain

Plaintiff's medical record revealed that his medical history upon arrival at the Jail included a diagnosis of chronic "peripheral neuropathy, unspecified," which is nerve pain related to back surgery Plaintiff had many years ago. Plaintiff arrived at the Jail with thirty days' worth of prescriptions for 3600 mg of gabapentin daily and 75 mg of Elavil daily, both of which Plaintiff had taken together for three years to adequately treat his chronic nerve pain.[3] Because gabapentin was not on the Jail's formulary, Dr. Moses gave a verbal order after Plaintiff's first appointment on March 5, 2014, to allow Plaintiff to finish out his supply of gabapentin and then to discontinue and not refill the gabapentin prescription. By March 17, 2014, Plaintiff had run out of gabapentin and Elavil to treat his chronic nerve pain and was left to suffer "severe pain" until he filed a grievance to Superintendent McPeak, who placed Plaintiff on the schedule to see Dr. Moses.

---

[3] Gabapentin is an anticonvulsant and analgesic drug which can be used to relieve neuropathic pain. (Moses Aff. 5.) Dr. Moses avers that Elavil is an alternative medication to gabapentin. Before his arrival at the Jail, Plaintiff had been prescribed, and was taking, both gabapentin and Elavil together to manage his chronic nerve pain.

4

After two weeks of suffering without any medication, Plaintiff met with Dr. Moses on April 1, 2014, and asked for the gabapentin and Elavil prescriptions to be renewed. Plaintiff explained how he suffered pain without them and that the daily quantities of gabapentin, 3600 mg, and of Elavil, 75 mg, had suppressed his chronic nerve pain for the past three years. Nonetheless, Dr. Moses prescribed Plaintiff only 100 mg of Elavil daily, which was just 25 mg more than the amount Plaintiff took in conjunction with 3600 mg of gabapentin.

Once Dr. Moses learned on May 13, 2014, that Plaintiff's family was willing to pay for the gabapentin, he re-authorized 3600 mg daily for ten days. After filling the prescription twice, Plaintiff's family could no longer afford to buy it, and Plaintiff received only Elavil to manage his chronic nerve pain.

On June 19, 2014, Plaintiff asked for an appointment to speak with Dr. Moses about ordering gabapentin at the Jail's cost. At the next appointment on June 24, 2014, Plaintiff complained about no longer receiving gabapentin and his chronic nerve pain. Although Plaintiff asked Dr. Moses to re-authorize 3600 mg of gabapentin daily, Dr. Moses did not re-authorize any amount of gabapentin, either for Plaintiff's family to pick up or to be provided at the Jail's expense. Instead, Dr. Moses ordered 900 mg of Elavil daily.

Plaintiff complained to Superintendent McPeak, who advised Plaintiff that "cost is not an issue, nor is who pays for it and if the doctor will order it then it will be got." Plaintiff subsequently learned that two other Jail inmates were receiving gabapentin without their families having to buy it.

Plaintiff saw Dr. Moses again on July 29, 2014, due to Plaintiff's complaints of back pain. Once Plaintiff confronted Dr. Moses with Superintendent McPeak's response and the names of two other inmates, Dr. Moses prescribed gabapentin to Plaintiff. However, Dr. Moses

ordered only 800 mg daily when it was provided at the Jail's cost instead of the 3600 mg daily he prescribed when Plaintiff's family was buying it.[4]

Plaintiff met with Dr. Moses for the final time on August 11, 2014. Because 800 mg of gabapentin daily was not enough to suppress his chronic nerve pain, Plaintiff requested the 3600 mg daily amount that had worked with Elavil for many years before arriving at the Jail. However, Dr. Moses increased the prescription from 800 to only 1200 mg daily, which was a third of the amount of gabapentin Plaintiff needed with Elavil to treat his pain. When Plaintiff complained about the insignificant increase, Nurse Akers acknowledged, "As you know, [gabapentin] are [sic] high [and] the jail pays for the extra that you don't pay for." Plaintiff was soon thereafter transferred out of the Jail.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to

---

[4] Although Dr. Moses avers that he ordered the gabapentin in July 2014 "because [Plaintiff's] family was willing to get it[,]" the record shows Plaintiff paid copays for these later prescriptions, which would not occur if Plaintiff's family had paid for them at a pharmacy outside the Jail.

6

support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

To succeed on his Eighth Amendment claim about medical care, Plaintiff must sufficiently demonstrate that a defendant was deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (internal quotation marks omitted)).

Deliberate indifference means a state actor was personally aware of facts indicating a substantial risk of serious harm and actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994); Estelle, 429 U.S. at 104. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52. A health care provider may be deliberately indifferent

7

when the treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. Non-medical prison personnel may be liable for being personally involved with a denial of treatment, deliberately interfering with a medical provider's treatment, or tacitly authorizing or being deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. Id. at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id.

### A. Mental Health

Regarding Plaintiff's alleged need for mental health treatment, Plaintiff has not established that any Defendant was responsible for scheduling or rendering mental health treatment. This omission is fatal to this claim. See, e.g., City of Canton v. Harris, 489 U.S. 378, 388-92 (1989). Accordingly, Defendants are entitled to summary judgment for this claim.

### B. Infected Left Ear

Regarding the infected left ear, Dr. Moses reviewed the medical record, repeatedly examined Plaintiff, repeatedly referred Plaintiff to consultations with the ENT, repeatedly reviewed the ENT's recommendations, and made medical decisions about the efficacies of various treatments for Plaintiff's left ear. Plaintiff's disagreement with Dr. Moses' professional determination to use various antibiotics does not state claim for relief under § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Dr. Moses' treatment of Plaintiff's left ear does not shock the conscience and was not intolerable to fundamental fairness. In fact, the record shows that Dr. Moses actively treated Plaintiff's left ear in response to Plaintiff's request for medical services. Plaintiff has not sufficiently shown that the condition of his left ear deteriorated because of Dr. Moses' treatment, especially in light of the ENT's order to use Cortisporin ear

8

drops. Plaintiff's disagreement with Dr. Moses' diagnosis and treatment of Plaintiff's left ear, even if they were, arguendo, negligent, does not entitle Plaintiff to relief under § 1983. Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). Plaintiff does not establish that Dr. Moses or any other defendant was responsible for the short delay in scheduling Plaintiff to see the ENT the first time, and in light of the long-term condition and treatment of his left ear, Plaintiff has not established that the short delay exacerbated the infection or unnecessarily prolonged the infliction of pain. Furthermore, Plaintiff has not described any other defendant's deliberate indifference to Plaintiff's infected left ear. Accordingly, Defendants are entitled to summary judgment for this claim.

**C. Chronic Nerve Pain**

The record, when viewed in the light most favorable to Plaintiff, supports Plaintiff's claim that Dr. Moses made him suffer chronic nerve pain solely due to the cost of gabapentin. However, Plaintiff fails to establish that any other defendant was responsible for the treatment of Plaintiff's chronic nerve pain, interfered with treatment, or tacitly approved an obvious instance of deliberate indifference. Accordingly, the motion for summary judgment is denied for this claim as to Dr. Moses and granted as to the other defendants.

While "[i]t is an unfortunate fact of modern life that cost considerations must enter into the equation for virtually every person seeking medical treatment," health care decisions based solely upon cost considerations without any medical rationale violate the Eighth Amendment when such decisions put an inmate at risk of experiencing significant pain. Taylor v. Barnett, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000); see, e.g., Chance v. Armstrong, 143 F.3d 698, 704 (2d Cir. 1998) (holding that where plaintiff alleged that doctors recommended a less expensive treatment not on the basis of medical views, but solely because of monetary incentives, such

9

allegation of an ulterior motive was sufficient to state a claim for deliberate indifference); Starbeck v. Linn Cnty. Jail, 871 F. Supp. 1129, 1146-47 (N.D. Iowa 1994) (allegation that recommended surgery was denied because state did not want to pay for associated costs created issue of material fact with respect to deliberate indifference).

Plaintiff arrived at the Jail from a federal correctional facility with a prescription for 3600 mg of gabapentin daily and 75 mg of Elavil daily. Dr. Moses allowed the Elavil prescription to lapse and, because gabapentin was not on the Jail's formulary list, ordered that Plaintiff's prescription for gabapentin not be refilled. Once Plaintiff consumed the remainder of his gabapentin and Elavil, he had no medications to manage his chronic nerve pain. Although Plaintiff asked medical staff to re-authorize the gabapentin and Elavil, the staff who responded could not authorize a prescription, could only schedule appointments for Plaintiff to see Dr. Moses, and reiterated that Dr. Moses would not prescribe gabapentin. No defendant besides Dr. Moses could be considered to have been responsible for the treatment of Plaintiff's chronic nerve pain, interfered with treatment, or tacitly approved an obvious instance of deliberate indifference.

Notably, Dr. Moses does not offer any medical rationale for his initial decision to stop gabapentin and not renew the Elavil, and he does not explain why he did not substitute a pain reliever on the formulary equivalent to 3600 mg of gabapentin. Furthermore, Dr. Moses also has not offered any medical basis to explain why he prescribed 3600 mg of gabapentin when Plaintiff's family paid for it yet prescribed approximately 80% less weeks later when the Jail paid for it, despite the fact that Dr. Moses was aware that 3600 mg of gabapentin daily and 75 mg of Elavil daily had treated Plaintiff's chronic nerve pain adequately.

The record supports a reasonable inference that Dr. Moses was deliberately indifferent to Plaintiff's chronic nerve pain when he withheld necessary pain medication solely to save money.

10

See, e.g., Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such a pain."). If medical attention and care given to an inmate is grossly inadequate, it may rise to the level of deliberate indifference. See, e.g., Sherrod v. Lingle, 223 F.3d 605, 611-12 (7th Cir. 2000). Accordingly, disputes of material facts preclude summary judgment as to Dr. Moses for this claim.

### IV.

For the foregoing reasons, I deny Defendants' motion for summary judgment in part as to the Eighth Amendment claim against Dr. Moses about Plaintiff's chronic nerve pain and grant the motion in part as to all other claims and Defendants. The remaining claim shall proceed to trial. Because Defendants responded to the Complaint within the time allowed, Plaintiff's motion for default judgment is denied. Plaintiff's motion to stay payment of the filing fees is denied because the payment schedule is mandated by 28 U.S.C. § 1915(b)(2). Dr. Moses shall file an answer within seven days.

ENTER: This 12th day of May, 2015.

/s/ Jackson L. Kiser
Senior United States District Judge